UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JULIAN SNIPE,

           Defendant.

**MEMORANDUM & ORDER**
18-CR-00609 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Defendant Julian Snipe previously pled guilty to one count of conspiring to commit a murder-for-hire that resulted in a victim's injury and one count of using a facility of interstate commerce in connection with a murder-for-hire that resulted in injury, both in violation of 18 U.S.C. § 1958.  ECF No. 588.  Several months later, Defendant filed a *pro se* motion to withdraw his guilty plea, and the Court has appointed new counsel to represent him, who supplemented that motion.  *See* ECF Nos. 585, 605, 678.  The Court held a hearing on the motion during which both Defendant and the Government presented testimony, including expert opinion testimony.  For the reasons set forth below, the Court denies Defendant's motion to withdraw his plea.

## PROCEDURAL HISTORY

      Defendant was arraigned in June 2019 and has been in custody since then.  ECF Nos. 91, 92.  On May 9, 2022, he appeared before Judge Raymond Dearie, who previously presided over this case, with the stated intent of pleading guilty to the first and second counts of the third superseding indictment.  ECF No. 589.  Those counts charged Defendant, respectively, with conspiring to commit murder-for-hire and with a substantive violation of the murder-for-hire statute, both in violation of 18 U.S.C. § 1958(a).  ECF No. 229 ¶¶ 1–2.  A jury later returned a

verdict after the trial of three of Mr. Snipe's co-defendants, finding that that were two victims harmed by the murder-for-hire plot: one who was killed and another who was injured. ECF No. 520. Mr. Snipe, however, had reached an agreement with the Government that he would plead guilty to so-called "lesser-included offenses" of the indictment's conspiracy and substantive murder-for-hire charges, so that he would plead guilty only to participating in offenses that resulted in a victim's injury. ECF No. 589 at 19:13–17, 25:19–25.

During Defendant's first change-of-plea hearing, he was represented by his prior court-appointed counsel. ECF No. 589 at 2:12–13. Defendant raised concerns that he "ha[d]n't been able to understand [his] actual role in the conspiracy" and yet had been offered a plea agreement for crimes punishable by imprisonment within a statutory range of zero to 40 years—and with a stipulated effective guidelines range of 30 to 40 years. *Id.* at 8:9–16. Defendant also said that he intended "to take the plea so I can get out of here." *Id.* at 10:12–14.

Judge Dearie told Defendant that he would adjourn the change-of-plea hearing for a few weeks so that Defendant would have additional time to confer with his attorney. ECF No. 589 at 11:2–21. However, approximately one hour later, Defendant and his attorney appeared again in open court and both indicated that Defendant was prepared to proceed with pleading guilty. *Id.* at 13:10–16. When Judge Dearie asked Defendant whether he "fully underst[oo]d the charges," Defendant responded in the affirmative. *Id.* at 13:17–19. Judge Dearie then proceeded to advise Defendant about the nature of the charges and the rights he would give up by pleading guilty, and to question Defendant about the voluntariness of his plea, as required by Fed. R. Crim. P. 11(b)(1) and (b)(2). *Id.* at 14:3–25:17. In doing so, Judge Dearie specifically explained to Defendant the legal elements of a conspiracy charge. *Id.* at 21:5–21. Defendant pled guilty to both counts, but before he provided a factual basis for the plea, he expressed his belief that "this

plea is crazy." *Id.* at 25:19–26:6.  At that point, Judge Dearie declined to accept the plea or proceed any further and adjourned any future change-of-plea proceedings for approximately two weeks.  *Id.* at 26:7–27:14.

On May 27, 2022, Defendant appeared again, this time with two court-appointed attorneys, to plead guilty to the same two charges.  ECF No. 588 at 2:4–12.  Judge Dearie again discussed with Defendant the topics required by Rule 11(b).  *Id.* at 5:20–19:1.  He also responded to Defendant's question about what would happen if Defendant did not have the financial resources to pay the agreed-upon forfeiture contemplated by the plea agreement or any fine or special assessment imposed at Defendant's eventual sentencing.  *Id.* at 15:1–21.  Defendant described the factual basis for his plea, and the Government proffered supplemental facts to which Defendant and his attorneys did not object.  *Id.* at 19:2–21:8.  Defendant asked for a brief break in the proceedings to confer with his counsel, after which he confirmed that he had no further questions.  *Id.* at 21:9–23.  Judge Dearie then accepted Defendant's plea of guilty.  *Id.* at 21:24–22:11.

A few weeks after pleading guilty, on June 16, 2022, Defendant wrote a *pro se* letter to Judge Dearie, which did not expressly request permission to withdraw his plea, and instead appears to have been designed to advocate for a sentence of "time served."  ECF No. 380 at 5.  In that letter, Defendant said that he was "guilty to a point" because he "did nothing to stop" the murder-for-hire conspiracy alleged in the indictment.  *Id.* at 1.  However, Defendant also made claims of innocence, specifically that he did not "ha[ve] anything to do with the plot or carrying out of the murder" of the victim who was killed and that he "could have prove[n]" that at trial.  *Id.*  Although Defendant admitted that he was "at the scene of the shooting" on the day that the second victim was seriously injured, Defendant asserted that he "didn't help in no way" and

3

claimed that he had been "told it was a drug pick up[,] which turned out to be a lie." *Id.* at 2. Defendant claimed that he "was passed out" in the vehicle used by the shooter—and "too high to keep [his] eyes open"—"until [he] heard the shots." *Id.* at 2, 4. At other points in Defendant's letter, he raised concerns with the fairness of his plea agreement and the sentencing guidelines applicable to the charges to which he plead guilty, rather than his responsibility for the crime. Specifically, Defendant said that he did not "understand how a 0-40 [years] is my only offer when I didn't have a role in this conspiracy." *Id.* at 4.

This case was reassigned to me on August 15, 2022, to preside over the trial of three of Mr. Snipe's co-defendants, and I have presided over the remaining proceedings in this case following Judge Dearie's retirement. ECF Entry dated Aug. 15, 2022. Jury selection proceedings began the following day with the distribution of questionnaires to prospective jurors. ECF Entry dated Aug. 16, 2022. Since Mr. Snipe had pled guilty, he and his counsel did not participate in the jury selection proceedings.

On August 23, 2022, one week after jury selection had begun and approximately two months after Defendant had sent his letter to Judge Dearie, Defendant's two prior attorneys filed a letter indicating that Defendant "ha[d] expressed an interest in filing a motion to withdraw his guilty plea." ECF No. 452. Defendant's counsel did not specify the basis for the motion but indicated that it would "likely raise issues relating to communications with counsel and advice given by counsel." *Id.* In response to that letter, the Court appointed a third attorney to represent Defendant for the purpose of assessing the basis for a potential motion to withdraw his plea, and she has continued to represent Defendant in connection with this motion. ECF No. 487.

The jury returned a verdict with respect to Mr. Snipe's three co-defendants who went to trial on October 19, 2022. ECF No. 520. One defendant was acquitted of all the charges against

him, but two other defendants were convicted of all charges, including conspiracy and substantive charges of murder-for-hire that caused the death of a victim. *Id.* Those murder-for-hire charges carried mandatory life sentences, which those defendants ultimately received several months later. ECF Nos. 643 & 645. On November 21, approximately one month after the trial had ended, Mr. Snipe's current attorney filed a letter stating that Defendant no longer desired to withdraw his plea and that he was "prepared to proceed to sentence." ECF No. 540. The Court set a sentencing date in April 2023 because Defendant's stated intent to withdraw his plea had delayed the Probation Department's preparation of a presentence investigation report required by Rule 32. ECF Order dated Dec. 6, 2022.

On December 8, 2022, Judge Dearie imposed the first sentences on two of Mr. Snipe's other co-defendants who, like him, pled guilty before trial. ECF Nos. 566 & 568. One defendant received a total term of imprisonment of 192 months, and the other defendant received a total term of imprisonment of 264 months. *Id.* The defendant who received the longer sentence had pled guilty to the same two charges as Mr. Snipe, whereas the defendant who received the shorter sentence had pled guilty only to one count of conspiring to commit murder-for-hire. *Id.*

Several weeks after Judge Dearie imposed those sentences, Mr. Snipe filed a *pro se* letter dated December 26, 2022, reiterating the request to withdraw his plea that he had previously disavowed through his attorney. ECF No. 585. Defendant said, "I've been wanting to take my plea back since the day I took it," and he requested "a hearing to take my plea back as soon as possible." *Id.* Defendant's letter did not explain the basis for his request to withdraw his plea. *Id.* The Court responded to Defendant's letter by directing his current counsel to confer with him and to supplement his motion if Defendant persisted in his desire to withdraw his guilty plea. ECF No. 590. But before Defendant's counsel had an opportunity to supplement the

motion, Defendant filed another *pro se* letter that asked for new counsel and provided further explanation for his desire to withdraw his plea. ECF No. 605. In that letter, Defendant argued that his two initial attorneys provided him with ineffective assistance of counsel, and he attempted to explain that he was not involved in the murder-for-hire to which he pled guilty. *Id.*

After conferring with Mr. Snipe, Defendant's current counsel confirmed that Mr. Snipe wanted her to continue to represent him. ECF No. 616.[1] When Defendant's counsel eventually supplemented Defendant's *pro se* motion to withdraw his guilty plea, she argued primarily that Defendant's plea was not voluntary because certain anti-depressant medication that he had been taking had been discontinued several weeks before his change-of-plea hearing. ECF No. 678. But Defendant's counsel also made clear that Mr. Snipe maintains his innocence of the charges to which he pled guilty. *Id.*

Defendant's counseled motion to withdraw his guilty plea did not argue that his prior counsel provided constitutionally ineffective assistance, as Mr. Snipe had attempted to argue in his earlier *pro se* submission. ECF No. 678. In fact, Defendant's current counsel opposed the Government's request that the Court order Defendant's prior attorneys to provide affidavits describing the advice they gave Defendant in connection with his guilty plea, arguing that any such affidavits would be "irrelevant" to the issues raised in Defendant's motion. ECF No. 687. When denying the Government's request, the Court therefore stated that it "deem[ed] Defendant Snipe to have withdrawn any assertion made in his earlier *pro se* letter, *see* ECF No. 605, that allegedly ineffective assistance provided by his former attorneys merits the Court allowing Defendant Snipe to withdraw his guilty plea." ECF No. 688.

---

[1] Defendant was present with his current counsel at two court appearances since she made this representation on his behalf, and Defendant did not raise any concerns about his attorney continuing to represent him during either appearance. ECF No. 682; ECF Entry dated Nov. 28, 2023.

6

The Court held an evidentiary hearing on Defendant's motion.  The Court heard testimony from:  (i) a psychotherapist whom Defendant retained to provide expert testimony on his behalf; (ii) a doctor who treated Plaintiff while he was detained at the Metropolitan Detention Center ("MDC"); and (iii) a psychiatrist whom the Government retained to provide expert testimony on its behalf.  Neither party presented any evidence about the advice Defendant received from his former attorneys.

## LEGAL STANDARD

A defendant may withdraw a guilty plea after a court has accepted it only if "the defendant can show a fair and just reason for requesting the withdrawal," *see* Fed. R. Crim. P. 11(d)(2)(B), and the defendant faces a "stringent" standard when attempting to make this showing, *see United States v. Albarran*, 943 F.3d 106, 118 (2d Cir. 2019).[2]  The ultimate inquiry that the Court must undertake is "whether the defendant has raised a significant question about the voluntariness of the original plea." *Albarran*, 943 F.3d at 117.  "A plea of guilty is deemed involuntary, and therefore void, if it is the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *United States v. Roque*, 421 F.3d 118, 122 (2d Cir. 2005); *see also United States v. Gil-Guerrero*, 759 F. App'x 12, 15 (2d Cir. 2018) (describing same standard).

When assessing whether to permit a defendant to withdraw his guilty plea, the Second Circuit has instructed courts to consider the following "general factors," in addition to the voluntariness of the defendant's plea:  "(1) whether the defendant asserted his legal innocence in his motion to withdraw; (2) the amount of time between the plea and the motion to withdraw; and (3) whether the government would be prejudiced by withdrawal of the plea." *United States*

---

[2]     Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

*v. Overton*, 24 F.4th 870, 879 (2d Cir. 2022). "A claim of innocence can be a basis for withdrawing a guilty plea, but the claim must be supported by evidence. A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.* Additionally, "a defendant's reevaluation of the government's case against him does not justify withdrawal of a plea." *Albarran*, 943 F.3d at 118.

## DISCUSSION

Defendant contends that his plea was not voluntary because on April 19, 2022, approximately five weeks before he pled guilty on May 27, a doctor at MDC discontinued Defendant's prescription of an anti-depressant medication, mirtazapine, "without tapering or substitution of another antidepressant." ECF No. 678 at 2–3. Defendant's expert opines that taking Defendant off this medication in this manner likely caused anti-depressant discontinuation syndrome, which would have "negatively affected [Defendant's] cognitive ability, particularly his ability to make thoughtful decisions." *Id.* She said that symptoms of this syndrome "can last for 6–8 weeks or, in select case, for several months." *Id.* at 3. Defendant's expert has further opined that Defendant was, in fact, manifesting "symptoms associated with this syndrome," based on her review of the transcript of Defendant's plea proceedings, Defendant's medical records from MDC, and her conversations with Defendant approximately one year after his guilty plea. *Id.*

The factual premise of Defendant's motion is wrong. As Defendant's own expert conceded during the hearing, MDC's medical records reflect that the doctor who took Defendant off mirtazapine did, in fact, prescribe a substitute anti-depressant, duloxetine. ECF No. 702-2 at 306. That prescription was promptly filled, and the medication was delivered to Defendant daily through the date of his guilty plea and beyond. *Id.* at 340–42. The prescribing doctor testified,

8

and the medical records reflect, that she instructed that Defendant's new medication be administered through MDC's so-called "pill line," which required MDC personnel physically to observe Defendant receiving and taking the medicine. *Id.* Defendant's counsel attempted during the hearing to raise the inference that Defendant potentially refused to take the new medication because he did not like it. Notably, Defendant was switched back to mirtazapine in June 2022 after he told another doctor at MDC that he thought the duloxetine was ineffective. *Id.* at 284–90. But Defendant presented no evidence to support his argument that he was not taking the duloxetine and, therefore, has failed to rebut the Government's evidence that he continuously took some form of anti-depressant medication through the date of his guilty plea.

The fact that Defendant had been diagnosed with major depressive disorder, for which he was receiving medication, does not render his guilty plea involuntary. Defendant mentioned during his change-of-plea hearing that his medication had recently been changed, and although he complained that the medication was ineffective, he and his counsel confirmed that he could understand the proceedings. ECF No. 588 at 4:9–5:13. Defendant confirmed multiple times that he understood the nature of the charges to which he was pleading guilty and the content of the plea agreement, and he expressly said that he was ready to plead guilty. *Id.* at 12:18–18:5. Defendant's statements made "under oath that his mind was clear and that he understood the nature of the proceedings that day" "carry a strong presumption of verity." *United States v. Velissaris*, No. 22-cr-105, 2023 WL 2875487, at *13 (S.D.N.Y. Apr. 10, 2023) (denying motion to withdraw guilty plea based on defendant's assertions that he "was unable to weigh his options rationally due to his depression, PTSD, alcohol use disorder, and social anxiety disorder"). Defendant further demonstrated his understanding of the proceedings by engaging in a dialogue with Judge Dearie about the legal definition of a conspiracy and by asking about the practical

9

implications of his inability to pay forfeiture or a fine. ECF No. 588 at 13:1–14, 15:1–21. These circumstances show that, even though Defendant was taking medication to treat a mental health condition, "he was able to understand complex information and make important decisions for himself." *United States v. Betancourt*, 645 F. App'x 66, 71 (2d Cir. 2016) (affirming denial of motion to withdraw from plea agreement based on argument that defendant "was suffering from depression that rendered him incapable of making intelligent, and thought-out decisions"); *see also Gil-Guerrero*, 759 F. App'x at 16 (holding that defendant's "active engagement during the plea proceeding[] confirm[ed] that he was able to weigh his options rationally").

Even if Defendant had not received a substitute anti-depressant—or if he had declined to take that substitute medication as prescribed—he still has not met his burden of demonstrating that his plea was involuntary. Both the doctor who treated Defendant and the Government's expert explained that Defendant had been receiving the lowest recommended dosage of mirtazapine and that discontinuing such a low dosage even without prescribing a substitute anti-depressant would have been unlikely to cause anti-depressant discontinuation syndrome. Defendant's expert conceded that receiving a lower dosage of an anti-depressant medication decreases the likelihood that a patient will experience discontinuation syndrome and that the severity of the syndrome's symptoms tend to decrease over time.

Based on this record, the attempt by Defendant's expert to attribute discontinuation syndrome to Defendant a year after his mirtazapine was discontinued based on a handful of notes in medical records and Defendant's after-the-fact insistence that he experienced symptoms is inadequate. The Court finds the Government's witnesses to have been more credible when opining about the likelihood that Defendant would have experienced discontinuation syndrome, particularly because they are medical doctors who have experience prescribing anti-depressant

medications in the past. Defendant's expert, on the other hand, although well-credentialed, is not a physician and cannot prescribe medication. Notably, at the hearing, Defendant's expert acknowledged that when she notices a potential issue with the anti-depression medication that one of her therapy patients is receiving, the most she can do is raise the issue with that patient's prescribing psychiatrist or other doctor. After weighing the evidence about the likelihood that Defendant was experiencing anti-depressant discontinuation syndrome, the Court concludes that Defendant has failed to raise a significant question about whether he had a "rational as well as actual understanding of the proceedings against [him], and that [his] guilty plea was knowing and voluntary." *United States v. Brooks*, 756 F. App'x 52, 56–57 (2d Cir. 2018) (affirming denial of motion to withdraw guilty plea and holding that plea was voluntary despite defendant's depression and other mental health issues).

The other factors that the Second Circuit has instructed the Court to weigh when assessing a plea withdrawal motion—*i.e.*, Defendant's assertion of innocence, the timing of the withdrawal request, and the prejudice to the Government—all favor denying the motion. Defendant's assertions of innocence are not persuasive because he has admitted in his own letters that he rode in a car with the shooter during the successful shooting of one of the murder-for-hire victims, and he admitted during his plea allocution that he exchanged text messages regarding the murder-for-hire conspiracy. ECF Nos. 380, 588, 605. The Government has provided text message exchanges between Defendant and one of the architects of the conspiracy that, when coupled with Defendant's admissions, show that Defendant's claims of innocence are nothing more than "bald statements that simply contradict what he said at his plea allocution." *Overton*, 24 F.4th at 879 (affirming denial of motion to withdraw guilty plea).

The timing of Defendant's request to withdraw his plea further undermines the credibility of his claims of innocence and involuntariness. As described above, Defendant's prior attorneys raised Defendant's intent to withdraw his plea on the eve of his co-defendants' trial. ECF No. 452. Defendant then disclaimed any intent to withdraw his plea after two of those defendants received convictions for crimes that carried mandatory life sentences—only to renew his request after two other defendants who pled guilty received significant sentences. ECF Nos. 540, 585. Defendant, therefore, did not unequivocally state his intention of withdrawing his plea until seven months after he pled guilty, and that delay suggests that his request should be denied. *United States v. Okparaeke*, No. 21-1933-cr, 2023 WL 2604351, at *2 (2d Cir. Mar. 23, 2023) (holding that delay of seven months supported district court's denial of motion to withdraw plea); *Overton*, 24 F.4th at 879–80 (holding that defendant's delay of five months in stating his intention to seek to withdraw his plea was a "substantial" delay that favored denying the motion). Apart from the delay, this procedural history suggests that Defendant wants to withdraw his guilty plea because of his "reevaluation of the government's case against him," weighed against his assessment of the likely punishment, and not because his plea was involuntary. *Albarran*, 943 F.3d at 118, 123 (affirming denial of motion to withdraw guilty plea and holding that delay of four months before making motion supported denial); *see also United States v. Doe*, 537 F.3d 204, 212 (2d Cir. 2008) (holding that defendant's "reevaluation of . . . the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea").

Finally, the Government would be prejudiced by Defendant's delay and indecisiveness because Defendant could have been incorporated into the six-week trial of his co-defendants with relative ease, and the Government would now be forced to marshal that evidence all over again. "The Government's need to prepare for trial again, having already done so once, weighs

12

against withdrawal." *Velissaris*, 2023 WL 2875487, at *19. The prejudice is particularly strong in this case because the Government's trial evidence depended on the testimony of two cooperating witnesses who have since been sentenced, along with a witness who refused to comply with the Government's subpoena and who testified only after being arrested pursuant to a material witness warrant. If the Government were forced to bring Mr. Snipe to trial, there is no guarantee that all three of these witnesses would be available.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant Julian Snipe's motion to withdraw his guilty plea. *See* ECF Nos. 605, 678. The Probation Department shall prepare Defendant's pre-sentence investigation report required by Rule 32 as soon as reasonably possible, and the Court will set a sentencing date after receiving the report.

SO ORDERED.

        */s/ Hector Gonzalez*
        HECTOR GONZALEZ
        United States District Judge

Dated: Brooklyn, New York
      January 2, 2024